**ALOE COAL COMPANY and Commercial Union Insurance Company**

v.

**CLARK EQUIPMENT CO., Appellant.**

No. 86–3488.

United States Court of Appeals,
Third Circuit.

Argued March 6, 1987.

Decided April 8, 1987.

Rehearing and Rehearing In Banc Denied May 4, 1987.

See also, D.C., 623 F.Supp. 88.

Arthur R. Gorr (argued), Gorr, Dell and Loughney, Pittsburgh, Pa., for appellant.

Cozen and O'Connor, Susan M. Danielski (argued), Kathie D. King, Philadelphia, Pa., for appellees.

Before GIBBONS, Chief Judge, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal requires us to decide if a sufficient quantum of admissible evidence was presented at trial to establish a prima facie case of negligence. We determine that plaintiff-appellee Aloe Coal Company did not present sufficient evidence of causation to submit its negligence claim to the jury.

We also visit again the issue that was before us in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981): whether Pennsylvania courts would permit a purchaser of industrial equipment to bring a tort action against the manufacturer for damages to the product caused by a sudden fire.

When the damages issue was here before we recognized that Pennsylvania had not yet settled the question of whether injury to an allegedly defective product itself was compensable in tort. We identified the majority rule, set forth in *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965), which seeks to preserve a proper role for the law of warranty by precluding tort liability if a defective product injures only itself, causing purely economic loss. The decision in *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965), embodies the minority approach. That case held that a manufacturer's duty to make nondefective products encompasses injury to the product itself, whether or not the defect creates an unreasonable risk of harm. In *Pennsylvania Glass Sand,* our court fashioned an intermediate position by declaring that whether product damages are classified as economic loss, and therefore not recoverable in tort but only under contract precepts, depends on the nature of the defect, the type of risk, and the manner in which the injury arose.

In the context of admiralty law, the Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, — U.S. —, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), specifically rejected our *Pennsylvania Glass Sand* position. We now predict that Pennsylvania courts, although not bound to do so, would nevertheless adopt as state law the Supreme Court's reasoning in *East River.* Accordingly, we hold that fire damage to the product here is not recoverable un-

der Pennsylvania law on a theory of negligence; the buyer's remedies are limited to those available under the law of warranty. Therefore, we will reverse the district court's denial of defendant-appellant Clark Equipment Company's motion for judgment notwithstanding the verdict and remand these proceedings to the district court with a direction that it enter judgment in favor of Clark as a matter of law.

## I.

In 1977 Aloe Coal Company, a strip mine operator, purchased a tractor shovel manufactured by Clark Equipment Company. After Aloe extensively used the tractor shovel for approximately five years, it was destroyed by a fire of unknown origin. Commercial Union Insurance Company, Aloe's insurer, reimbursed Aloe for the full amount of the loss and subsequently filed suit against Clark in the district court based on three theories: negligence, strict liability, and breach of warranty. The district court exercised diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, and applied Pennsylvania substantive law to the controversy. The case went to the jury on the negligence theory only, and in response to special interrogatories, the jury found Clark sixty-five percent negligent and the plaintiffs thirty-five percent negligent. Judgment was entered accordingly.

On May 16, 1986, Aloe filed a motion to mold the jury verdict to include delay damages under Rule 238, Pa.R.Civ.P. Thereafter, Clark filed a motion for judgment n.o.v. or, in the alternative, for a new trial, which was denied by the district court on July 16, 1986. On August 12, 1986, Clark filed a notice of appeal from the July 16 order while Aloe's May 16 motion was still pending before the district court. On September 29, 1986, the district court granted Aloe's May 16 motion; Clark did not file a new notice of appeal.

## II.

As a preliminary matter, we address *sua sponte* the issue of our appellate jurisdiction. The matter that gives us reason to pause is the pendency of Aloe's post-judgment motion in the district court at the time Clark filed its only notice of appeal. If that motion was a Rule 59(e), F.R.Civ.P., motion to alter or amend the district court's judgment, Clark's notice of appeal would have been a nullity and appellate jurisdiction over this case would be absent. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); Rule 4(a)(4), F.R.App.P. If, however, Aloe's motion was a Rule 60(a), F.R.Civ.P., motion to correct a clerical error, the time for appeal would not have been suspended and our appellate jurisdiction would be proper. *See Barris v. Bob's Drag Chutes & Safety Equipment, Inc.*, 717 F.2d 52, 55 (3d Cir.1983). We find Aloe's post-trial motion to have been in the nature of a Rule 60(a) motion and hence conclude that we have appellate jurisdiction over this case.

## A.

The caption to Aloe's motion described it as "PLAINTIFFS' MOTION TO MOLD JURY VERDICT TO INCLUDE DAMAGES FOR DELAY UNDER Pa.R.C.P. 238," and made no reference to the federal procedural rule under which it was submitted. In paragraph four, however, the motion recited that it was "being filed within the ten-day time period specified in F.R. C.P. 59(e) with respect to Motions to alter or amend judgments." Even were we to take this recital to evidence an intent on Aloe's part to submit the motion pursuant to Rule 59(e), it would not be controlling for the purposes of Rule 4(a), F.R.App.P. "The focus ... is on the function of the motion, not its caption." *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir.1984); *see also Glick v. White Motor Co.*, 458 F.2d 1287, 1293–94 (3d Cir.1972) (district court did not err in entertaining, under Rule 60(a), a motion for prejudgment interest notwithstanding that it was filed under Rule 59(e)). Accordingly, we look to the intended function of Aloe's motion to determine its effect on the time for appeal under Rule 4(a).

Aloe's motion was for the purpose of adding delay damages to its jury verdict

pursuant to a Pennsylvania procedural rule, Pa.R.Civ.P. 238. We previously have held that "a post-judgment motion for Rule 238 delay damages is in the nature of a motion to correct clerical mistakes in judgment under Rule 60(a), F.R.Civ.P." *Bob's Drag Chutes*, 717 F.2d at 55. We explained the reason for this characterization in *Hayden v. Scott Aviation, Inc.*, 684 F.2d 270, 272 (3d Cir.1982), where we noted that Rule 238 leaves no room for judicial discretion, but involves "a simple clerical matter." [1] *See also Glick*, 458 F.2d at 1294 (omission of prejudgment interest under analogous Michigan law was a clerical error correctable by Rule 60(a) motion). Accordingly, Aloe's motion was governed by Rule 60(a). *See Hayden*, 684 F.2d at 271.

### B.

■ As a motion under the aegis of Rule 60(a), Aloe's post-judgment motion for delay damages had no effect on the time for appeal under Rule 4(a), F.R.App.P. *See Bob's Drag Chutes*, 717 F.2d at 55 (citing *International Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978)); *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 668 (5th Cir.1986) (in banc), *cert. denied*, — U.S. —, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). Clark, therefore, was required to file an appeal within thirty days of July 16, 1986, the date on which Clark's motion for judgment n.o.v. or a new trial was denied. Because Clark filed its notice of appeal on August 12, 1986, within the thirty day period, appellate jurisdiction is properly vested in this court.

### III.

Moving to the merits of the present dispute, Clark first contends that the district court erred in denying its motion for judgment n.o.v. because Aloe did not carry its burden of proving that Clark's alleged negligence was the legal cause of the accident.

**1.** The district court entertained Aloe's motion for delay damages prior to the Pennsylvania Supreme Court's decision in *Craig v. Magee Me-*

### A.

■ In examining the district court's denial of appellant's motion for judgment n.o.v. or, in the alternative, for a new trial, we are required to " 'view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict.' " *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir.1984) (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979)). A judgment n.o.v. may be granted under Rule 50(b), F.R.Civ.P., "only if, as a matter of law, 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.' " *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir. 1977) (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969)); *see also Powell v. J.T. Posey Co.*, 766 F.2d 131, 133–34 (3d Cir.1985). In considering a motion for judgment n.o.v., a court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. *Blair v. Manhattan Life Insurance Co.*, 692 F.2d 296, 300 (3d Cir.1982). On appeal, this court applies the same standard as the district court in determining the propriety of a judgment n.o.v. *Powell*, 766 F.2d at 134.

### B.

Before we evaluate the evidence in light of this standard, we must review the legal components of Aloe's claim. In a negligence action under Pennsylvania law, "[t]he plaintiff has the burden of proving the negligence of the defendant as the legal cause of the accident." *Rice v. Shuman*, 519 A.2d 391, 395 (Pa.1986). This places upon the plaintiff the obligation of "both coming forward with the evidence of the defendant's negligence and persuading the factfinder on this issue." *Id.* The *Restatement (Second) of Torts* § 431 (1979) sets forth the definition of legal cause:

*morial Rehabilitation Center*, 515 A.2d 1350 (Pa. 1986). We express no opinion on the nature of Rule 238 motions made in the wake of *Craig.*

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Pennsylvania has adopted the Restatement analysis. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 246, 465 A.2d 1231, 1233 (1983); *Ford v. Jeffries*, 474 Pa. 588, 594, 379 A.2d 111, 114 (1977).

The question of causation is ordinarily for the jury. *Ford*, 474 Pa. at 595, 379 A.2d at 114; *see generally* W. Keeton, *Prosser and Keeton on the Law of Torts* § 41, at 269 (1984). However, "if [the] plaintiff has failed to establish in the case in chief evidence that would support a finding that the defendant's negligence was a legal cause of plaintiff's injuries a non-suit would be appropriate as there would be no question to present to a jury." *Rice*, 519 A.2d at 395–96 n. 5.

### C.

■ After a thorough review of the testimony in this case, we conclude that there was not sufficient proof of causation to allow Aloe's negligence claim to go to the jury. Aloe's theory was that "a fire originated within the ... 475B Michigan hi-lift tractor as a result of a ruptured hydraulic pressure line." App. at 8a. Aloe contended that the ruptured line was due to Clark's negligence in manufacturing the tractor shovel. *Id.* The critical question is whether Aloe supported its allegation regarding the cause of the fire.

Aloe relied solely on the testimony of one person to establish causation. He was Michael Drewnoski, a sales representative for Mendes & Company, whose position required him to determine the costs of repairing and replacing damaged equipment. Over Clark's objections, the district court allowed Drewnoski to give expert testimony regarding the cause of the tractor shovel fire. Drewnoski's opinion was that the fire was caused by a leak in one of the hydraulic lines. App. at 318a. This testimony presents the threshold question of whether Drewnoski was competent to serve in this expert witness capacity.

■ Guiding us are settled legal precepts. An expert witness must have such skill, knowledge, or experience in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth. *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 682 (3d Cir.1980); *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.*, 546 F.2d 530, 537 (3d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *see also* Rule 702, F.R. Evid. The determination of competency of an expert witness rests with the discretion of the district court. *Caisson Corp.*, 622 F.2d at 682; *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87 (3d Cir.1979); *Universal Athletic Sales*, 546 F.2d at 537. The Supreme Court has stated that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962).

■ After carefully reviewing Mr. Drewnoski's credentials, we conclude that the district court abused its discretion by allowing the witness to testify regarding the cause of the tractor shovel fire. Drewnoski was not an engineer. He had no experience in designing construction machinery. He had no knowledge or experience in determining the cause of equipment fires. App. at 300a. He had no training as a mechanic. He had never operated construction machinery in the course of business. *Id.* at 303a–04a. He was a salesman, who at times prepared damage estimates.

■ We are well aware of "the liberal policy of permitting expert testimony which will 'probably aid' the trier of fact." *Knight*, 596 F.2d at 87. But, at a minimum, a proferred expert witness on causation must possess skill or knowledge greater than the average layman in determining causation. Drewnoski did not. We there-

fore conclude that the district court abused its discretion in allowing him to testify as an expert on the cause of the tractor shovel fire. *See, e.g., Higginbotham v. Volkswagenwerk Aktiengesellschaft,* 551 F.Supp. 977 (M.D.Pa.1982) (investigating officer not qualified to offer opinion as to movement of body inside vehicle even though officer had experience as accident investigator, where officer had only minimal training in accident reconstruction, physics, and the movement of bodies), *aff'd mem.,* 720 F.2d 669 (3d Cir.1983); *Globe Indemnity Co. v. Highland Tank and Manufacturing Co.,* 345 F.Supp. 1290 (E.D.Pa.1972) (neither electrical engineer nor industrial hygienist was qualified to testify as an expert on the design of molasses storage tank, where neither witness had any prior experience or observational knowledge in the field of storage tank design), *aff'd mem.,* 478 F.2d 1398 (3d Cir. 1973).

### D.

Aside from the testimony of Drewnoski, Aloe did not present any evidence from which a jury might reasonably conclude that Aloe's tractor shovel fire was caused by a ruptured hydraulic line. Viewing the record in the case in the light most favorable to the plaintiff, we do not find a "minimum quantity" of evidence of causation. Accordingly, we conclude that the district court should not have submitted Aloe's negligence claim to the jury. But this does not end our inquiry. We must now decide if Clark was entitled to judgment n.o.v. on this issue alone.

### IV.

We are faced with circumstances in which the totality of causation evidence, minus the Drewnoski testimony, was insufficient to send the case to the jury. Under such circumstances, it is clear that in considering a post-trial motion for a new trial the court is free to consider the abridged record, that is, in this case, a reconstructed record that did not include Drewnoski's testimony. *See Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 249, 251, 61 S.Ct.

189, 194, 85 L.Ed. 147 (1940). But the same clarity in the law is not present when the post-trial motion is for judgment n.o.v. This question has not been presented to us heretofore and, indeed, in this case we raise it *sua sponte* because the appellee, Aloe, has not responded to Clark's argument that it was entitled to judgment n.o.v. because of the incompetency of Drewnoski's testimony.

The United States Courts of Appeals for the Fifth and Eighth Circuits, and the Supreme Court of New Mexico, suggest that although a truncated record may properly be considered in a motion for a new trial, the court must consider the entire record, replete with incompetent evidence, in deciding the judgment n.o.v. question. *See Dixon v. International Harvester Co.,* 754 F.2d 573, 580 (5th Cir.1985); *Sumitomo Bank of California v. Product Promotions, Inc.,* 717 F.2d 215, 218 (5th Cir. 1983); *Midcontinent Broadcasting Co. v. North Central Airlines, Inc.,* 471 F.2d 357, 358 (8th Cir.1973); *Townsend v. United States Rubber Co.,* 74 N.M. 206, 392 P.2d 404, 406 (1964).

We have carefully examined the opinions from the Fifth and Eighth Circuits, and New Mexico, but regrettably we find no reasoned elaboration to support their thesis that "[i]n ruling on the sufficiency of evidence the trial court must take the record as presented to the jury and cannot enter judgment on a record altered by the elimination of incompetent evidence." *Midcontinent Broadcasting Co.,* 471 F.2d at 358. The longest discussion appears in New Mexico's *Townsend* case which, upon analysis, is one conclusory statement piled on another. *Townsend,* 392 P.2d at 406. What results is a classic case of precedential inbreeding where decisions multiply and parrot a holding, with no court pausing, first, to identify the competing social, public, or private interests involved, then, to resolve the possible conflicts, and finally, to give public reasons for the resolution.

The closest to an explanation forthcoming in the cases appears in *Midcontinent Broadcasting Co.:*

The subsequent ruling, after the verdict, that the expert opinion was not admissible after it had been originally received and considered by the jury, placed plaintiff in a relative position of unfair reliance. If plaintiff had been forewarned during the trial that such testimony was not admissible it conceivably could have supplied further foundation or even totally different evidence. Under these circumstances the grant of the judgment n.o.v. was not a proper remedy.

471 F.2d at 359. This explanation, of course, does not address either the competing reliance concerns of the defendant, or the homespun axioms that a litigant is entitled to only one bite of the apple or to only three strikes at bat.

In any event, we are not required to resolve this issue here, and indeed, we prefer not to because the question was not addressed by counsel by brief or argument on appeal or in the post-trial motions. We need not meet this issue because we hold that, as a matter of law, the plaintiff was not entitled to the damages it sought.

## V.

Our approach requires us to decide if fire damages to Aloe's tractor shovel may be recovered by the purchaser from the vendor on a theory of negligence under Pennsylvania law. We exercise plenary review over this issue. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981).

## A.

It cannot seriously be questioned that, if presented timely, Aloe, the buyer of an allegedly defective product, and its insurer had rights and remedies against Clark, the manufacturer, under contract and Uniform Commercial Code precepts. Nor is it disputed that Aloe suffered neither personal injury nor property damage other than loss of the purchased product. Since Aloe sought damages only for the replacement cost of the defective product, its loss was purely economic. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* —

U.S. ——, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280, 284 (3d Cir.1980).

## B.

In *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir.1981), we wrestled with the issue of whether Pennsylvania would permit the purchaser of an allegedly defective product destroyed by a sudden fire to recover damages from the manufacturer in an action founded solely on products liability and negligence theories. At the time of our decision, then, as now, the Pennsylvania Supreme Court had not specifically addressed this issue. This court, speaking through Judge Adams, predicted that the Pennsylvania Supreme Court would distinguish between the type of injury to a defective product that constituted mere economic loss compensable under warranty law, and the type of injury that amounted to the sort of physical harm compensable in tort. In delineating the line between tort and warranty law, Judge Adams stated that "the items for which damages are sought are not determinative"; rather "the nature of the defect and the type of risk it poses are the guiding factors." *Id.* at 1174. Judge Adams further distinguished damages that accrued slowly over time from those which occurred suddenly; because the damages in that case were "the result of a fire—a sudden and highly dangerous occurrence," the court held that the complaint fell within the policy of tort law. *Id.* at 1174–75.

We applied the *Pennsylvania Glass Sand* rationale in *East River S.S. Corp. v. Delaval Turbine, Inc.,* 752 F.2d 903 (3d Cir.1985) (in banc), *aff'd on other grounds,* —— U.S. ——, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). There, in the context of admiralty law, we concluded that damages to a supertanker turbine resulting from normal operation and the gradual and unnoticed deterioration of component parts were not recoverable from the manufacturer in tort. Since the defective turbine "did not pose an unreasonable risk of harm to persons or

property," the court held that the plaintiffs "failed to state a cause of action in tort." *Id.* at 909.

Our conclusion in *Delaval Turbine* was affirmed by the Supreme Court for different reasons in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* — U.S. —, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River,* the Supreme Court, sitting in admiralty, held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." — U.S. at —, 106 S.Ct. at 2302. In so holding, the Court adopted in principle the majority rule of *Seely v. White Motor Co.,* 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965), which precludes courts from imposing tort liability on a manufacturer if a defective product injures only itself. The Court labeled our *Pennsylvania Glass Sand* formulation an "intermediate" approach and rejected our position as "unsatisfactory":

> The intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior. Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous.... But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.

— U.S. at —, 106 S.Ct. at 2302.

### C.

Because our jurisdiction in this case is founded on diversity of citizenship, we are bound to apply Pennsylvania law to the present controversy. *See Wilson v. Asten-Hill Manufacturing Co.,* 791 F.2d 30, 32

(3d Cir.1986); *McGowan v. University of Scranton,* 759 F.2d 287, 290 (3d Cir.1985); *see also Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). No Pennsylvania Supreme Court decision addresses the instant issue; therefore, we must predict how that court would decide the question. *Wilson,* 791 F.2d at 32; *McGowan,* 759 F.2d at 291. "In attempting to forecast state law, we 'must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *McGowan,* 759 F.2d at 291 (quoting *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980)); *see also Erie Castings Co. v. Grinding Supply, Inc.,* 736 F.2d 99, 100 (3d Cir.1984).

We understand completely that the *East River* holding is not binding on Pennsylvania courts, because the Supreme Court's decision was based on an interpretation of federal admiralty law only. The United States Supreme Court is supreme in matters of federal law; the Pennsylvania Supreme Court is supreme in matters of Pennsylvania law. Nevertheless, we conclude that the United States Supreme Court's analysis is so persuasive that it will be followed by Pennsylvania courts.

### D.

In reaching its decision in *East River,* the Court emphasized five considerations: (1) when the defective product injures only itself the reasons for imposing a tort duty are weak and those limiting remedies to contract law are strong; (2) damage to the product itself is most naturally understood as a warranty claim; (3) contract law is well suited to commercial controversies because the parties may set the terms of their own agreements; (4) warranty law sufficiently protects purchasers by allowing them to obtain the benefit of their bargain; and (5) warranty law has a built-in limitation on liability, whereas tort actions could subject manufacturers to an

indefinite amount of damages. —— U.S. at ——, 106 S.Ct. at 2303.

In *East River*, the Court also focused on the realities of the marketplace and recognized the *quid pro quo* of modern arm's length commercial transactions of the character now before us. In the case before us, the business relationship was between a coal mining company, an experienced purchaser and user of excavating equipment, and the manufacturer that supplied the equipment. The Court noted that under similar circumstances, the manufacturer could restrict its liability by disclaiming warranties or limiting remedies under sections 2–316 and 2–719 of the Uniform Commercial Code, 13 Pa.Cons.Stat. §§ 2316, 2719. In exchange, the purchaser bargains to pay less for the product.

On the basis of the foregoing, the Court arrived at a public policy judgment for cases of this type, concluding that it preferred the built-in limitation on damages in a warranty action over the open-ended and indefinite damages available in tort. In the former, the limitation stems from foreseeability and privity; in the latter, "[i]t would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." —— U.S. at ——, 106 S.Ct. at 2304.

The Court's opinion was not a paste and scissors job that set forth the diverse holdings in myriad cases and then arbitrarily opted for one view over the others. *see, e.g.*, *Pennsylvania Glass Sand*, 652 F.2d 1165, 1170–72 & nn. 17, 18 (3d Cir.1981); *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 284–90 & n. 13 (3d Cir.1980). The Court heeded the teaching of Lord Mansfield: "The law does not consist in particular instances, though it is explained by particular instances and rules; but the law consists of principles, which govern specific and individual cases as they happen to arise." *R. v. Bembridge*, 22 How.St. Tr. 2, 155 (K.B. 1783). The Court identified, examined, and evaluated controlling dogma, doctrine, and fundamental principles of tort and contract remedies. *See generally* Aldisert, *The House of the Law*, 19 Loy. L.A.L.Rev. 755,

764 (1986) ("The time has come to identify exactly what fundamentals underlie the controversy in each case, and to isolate which is the governing branch of the law's family tree. Our first step in any legal argument must be to look at the tree's trunk and main branches, rather than to concentrate on new twigs that continually sprout in all directions."). For these reasons, we are convinced that the Pennsylvania Supreme Court will adopt the analysis of *East River*.

### E.

We recognize that our conclusion may not be considered congruent with two recent cases in the Pennsylvania intermediate appellate court. In *Industrial Uniform Rental Co. v. International Harvester Co.*, 317 Pa.Super. 65, 463 A.2d 1085 (1983), the court embraced the rationale of *Pennsylvania Glass Sand:* "We believe in the validity of the 'type of harm' approach...." *Id.* at 72, 463 A.2d at 1089; *see also id.* at 72–80, 463 A.2d at 1089–93. In *Johnson v. General Motors Corp.*, 349 Pa.Super. 147, 502 A.2d 1317 (1986), the court followed *Industrial Uniform*'s holding and reaffirmed the rationale of *Pennsylvania Glass Sand.* Moreover, *Johnson* cited our decision in *Delaval Turbine* with approval. *Id.* at 160–61, 502 A.2d at 1323–24. These pronouncements have made our task more uncertain than it otherwise would be, yet do not dissuade us from our ultimate conclusion.

We restate that our role in this case is predictive. *Wilson v. Asten-Hill Manufacturing Co.*, 791 F.2d 30, 32 (3d Cir.1986). Furthermore, although we must accord proper regard to decisions of intermediate state courts, they are not conclusive. *Connecticut Mutual Life Insurance Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983). Notwithstanding the pronouncements of the Superior Court of Pennsylvania in *Industrial Uniform and Johnson*, we recognize that at the time of these holdings, the Superior Court (and the district court here) did not have the benefit of *East River;* their decisions were made before the United States Supreme Court had flatly reject-

ed our holding and rationale in *Pennsylvania Glass Sand.* We remain convinced that the Pennsylvania Supreme Court would not accept *Industrial Uniform* and *Johnson* in light of the United States Supreme Court's rejection of *Pennsylvania Glass Sand.* Nor has our independent research disclosed any Pennsylvania case that has had the opportunity to consider *East River.* We believe that Pennsylvania courts will reaffirm their lack of hospitality to tort liability for purely economic loss. *See Moore v. Pavex, Inc.,* 514 A.2d 137 (Pa.Super. 1986); *Aikens v. Baltimore & Ohio Railroad Co.,* 348 Pa.Super. 17, 501 A.2d 277 (1985).

### F.

In our present analysis, a murky trudge through sophisticated nuances gives way to an unencumbered flight to basics. Damage to a product means simply that the customer has received "insufficient product value," *East River,* —— U.S. at ——, 106 S.Ct. at 2303, and maintaining value and quality is precisely the purpose of familiar contractual concepts such as express warranty, implied warranty of merchantability, and warranty of fitness for a particular purpose. With such broad remedial thoroughfares open, the product's purchaser may sue for breach of warranty or reject the product, revoke its acceptance, and sue for breach of contract. These approaches are well suited to commercial controversies because the parties may set the terms of their own liabilities.

We are uncomfortable that the decision we reach today conflicts directly—on a similar fact pattern—with our holding in *Pennsylvania Glass Sand* in predicting how Pennsylvania courts will resolve this problem. But in the interim the Supreme Court has spoken; its words are loud and clear. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Chapter 8C, at 25; *United States v. Babich,* 785 F.2d 415, 417–18

(3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 123, 93 L.Ed.2d 69 (1986); *United States v. Walter Dunlap & Sons, Inc.,* 800 F.2d 1232, 1237 n. 7 (3d Cir.1986). As we have said before, we are impressed by the cogent reasoning set forth in its opinion. Moreover, Justice Blackmun has spoken for a unanimous Court. Where, as here, uniform agreement prevailed in both the result and the reasoning, Marshall McLuhan's statement comes to mind—the medium is the message.

### VI.

We have determined that Aloe did not present sufficient evidence of causation to submit its negligence claim to the jury.[2] We have also made a studied conclusion, or perhaps more accurately an educated guess, that Pennsylvania will declare as state law that which the United States Supreme Court has since formulated as federal law. For this reason, we will reverse the district court's denial of Clark's motion for judgment notwithstanding the verdict. We will remand this case to the district court with a direction that it enter judgment in favor of Clark.[3]

---

2. Judge Seitz joins in the judgment of the court solely on the basis of the court's conclusion with respect to causation.

3. In light of our holding on the damages issue, we need not address Clark's additional contentions on appeal.