[601 NYS2d 116]

TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Appellant-Respondent, v GWATHMEY SIEGEL AND ASSOCIATES ARCHITECTS et al., Defendants, EMERY ROTH & SONS, P. C., Respondent-Appellant, and MORSE/DIESEL, INC., Respondent.

First Department, August 5, 1993

152

**APPEARANCES OF COUNSEL**

*Mark P. Ladner* of counsel *(Claire Silberman, Howard A. Jacobson* and *Jo-Anne Weissbart* with him on the brief; *Morrison & Foerster* and *Columbia University Office of General Counsel,* attorneys), for appellant-respondent.

*Kevin G. Faley* of counsel *(Morris, Duffy, Alonso & Marulli,* attorneys), for Emery Roth & Sons, P. C., respondent-appellant.

*Scott D. St. Marie* of counsel *(Frederick R. Rohn* and *Ronald E. Sharpe* with him on the brief; *Sacks Montgomery, P. C.,* attorneys), for Morse/Diesel, Inc., respondent.

**OPINION OF THE COURT**

Per Curiam.

This action was commenced to recover damages suffered by plaintiff-appellant as a result of defendants' allegedly defective design and construction of plaintiff's East Campus Housing Facility, a complex consisting of student residences and various other facilities. Defendant-respondent Morse/Diesel served as construction manager for the project, under an agreement which arranged for Morse/Diesel to serve as a design consultant and to provide technical advice to plaintiff, including cost monitoring and schedule coordination, to award and administer necessary subcontracts, to bear responsibility for coordinating and overseeing the work of the subcontractors, to advise plaintiff concerning costs, to obtain all necessary permits and to "assume and undertake all responsibilities of causing the Project to be completed to the Owner's satisfaction within the Guaranteed Maximum Price".

The project had a long and troubled history extending well after, as a result of plaintiff's severe student housing shortage, students began to live there in 1981. The problems included extensive leakage, ponding of water in the plaza, the necessary replacement of a substantial portion of the arcade deck and of the eastern portion of the plaza, frozen pipes due to inadequate insulation, water seepage through the tile facade and extensive deterioration of bathroom tiling.

In 1988, after the buildings were fully occupied, a large chunk of the facade fell into the complex's internal courtyard. Fortunately, although the courtyard was regularly used by students and other pedestrians, no one was injured. Because of the great danger posed by the falling facade, plaintiff immediately undertook emergency safety measures, including the erection of barricades and scaffolding, and emergency repairs to contain deteriorated areas of the facade. Plaintiff also conducted an investigation, which, it is alleged, revealed "extensive cracking of tiles, deteriorated caulking, corroded and improperly set fasteners, deteriorated lath and severe displacement of tile panels." As a result, plaintiff determined that the facade was so severely deteriorated that it would have to be completely replaced, requiring the demolition of the original facade and the design and construction of a new facade and related building systems.

Plaintiff brought this action seeking damages, both compensatory and punitive, for breach of contract, negligence and

strict liability for the creation of an unreasonably dangerous, unsafe and defective condition. Among the items for which plaintiff seeks compensation are the cost of replacing the facade and the costs of scaffolding and barricades to protect pedestrians from the collapsing facade.

On a prior appeal (167 AD2d 6), this Court held that questions of fact exist concerning the date upon which plaintiff's claim accrued and denied Morse/Diesel's motion to dismiss on Statute of Limitations grounds. Subsequently, defendant Morse/Diesel moved for summary judgment dismissing plaintiff's causes of action in negligence and strict liability. The IAS Court granted that motion and, at the same time, granted plaintiff's motion to amend its ad damnum clause. Plaintiff appeals from the dismissal and defendant Emery Roth & Sons cross-appeals as to the ad damnum clause.

■ Contrary to the IAS Court, we find that, particularly given the fact that only limited discovery has taken place, plaintiff has made a showing that Morse/Diesel bore, and breached, "a legal duty independent of the contract itself" *(Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 389) sufficient to withstand summary judgment on its cause of action for negligence. The particular project here in issue, involving the construction of a facade for a tall building in a heavily trafficked public area of a college campus, is so affected with the public interest that the failure to perform competently can have catastrophic consequences. This is one of the most significant elements in determining whether the nature of the type of services rendered gives rise to a duty of reasonable care independent of the contract itself *(Sommer v Federal Signal Corp.,* 79 NY2d 540, 553). In the context of modern construction undertaken in a crowded metropolis consisting largely of buildings of great heights, it is clear that the countless members of the public who, as a matter of course, must pass by and beneath them on a daily basis necessarily trust their very lives to the competence and expertise of those who build them. Indeed, in this case, a potentially fatal disaster was averted only by sheer chance and by plaintiff's prompt action in cordoning off the dangerous area. While not every construction project may be found to be so intimately affected with the public interest as to evoke such a separate duty, the one in this case, involving as it does housing and other facilities on a crowded and much-used college campus located in the heart of the largest city in the country, clearly must be said to affect a significant public

interest. The sudden precipitous manner in which the harm in this case occurred adds further support to a finding that a claim lies in tort *(supra)*. Defendant's argument that the facade had been deteriorating for a substantial period before a chunk of it fell into the courtyard and that the harm must therefore be deemed "gradual" deserves short shrift. The fact that the sudden extremely dangerous partial collapse of the facade occurred long before the project was even a decade old can hardly be said to be the kind of gradual deterioration in buildings that may be expected to occur over the course of extended time.

Contrary to the trial court, we do not find that the cause of action for negligence is precluded by the decision in *Bellevue S. Assocs. v HRH Constr. Corp.* (78 NY2d 282). In *Bellevue,* the Court of Appeals dealt with the issue of whether a cause of action in strict products liability would lie against the manufacturer of a product, in that case floor tiles, which fails to meet the expectation of a commercial customer *(supra,* at 290). It found that it would not under the facts of that case where the product involved was not an inherently dangerous one and the injury was solely to the product itself *(supra,* at 294). The instant case, in distinction, falls within the ambit of *Sommer v Federal Signal Corp. (supra,* at 553), which recognizes the separate tort liability that can arise independently of the contractual relationship between the parties where the nature of the performance called for is affected with a significant public interest and "failure to perform the service carefully and competently can have catastrophic consequences".

■ While we find that plaintiff's negligence claim should be reinstated, we agree that plaintiff's claim for strict liability may not stand. The construction contract in this case was clearly for the performance of a service, and, as such, it does not fall within the sphere of strict products liability *(Milau Assocs. v North Ave. Dev. Corp.,* 42 NY2d 482; *Hart v Moray Homes,* 158 AD2d 890). We note in this context that while this case is seemingly similar factually to a completely separate case involving the same plaintiff *(Trustees of Columbia Univ. v Mitchell/Giurgola Assocs.,* 109 AD2d 449), it differs from it in a critical respect. In that case, this Court held that plaintiff would have a claim in strict products liability against the manufacturer of precast concrete panels and tiles which were subsequently used in the construction of an exterior curtain wall of a building and consequently caused the entire wall to be rendered defective and in imminent danger of collapse. In

the instant case, there is no allegation that a specified defective product had been used in the construction of the wall which was responsible for the wall's ultimate dangerously deficient condition. Instead, the complained-of defect was in the manner of the construction of the facade, rather than in any specific product. Thus, summary judgment was properly granted on plaintiff's cause of action for strict liability.

█ Finally, on the cross appeal, we find that defendant Emery Roth & Sons, P. C., has failed to show that it has been prejudiced as a result of the increase in the ad damnum clause from "at least" $10 million to "at least" $25 million. In the absence of prejudice, leave to amend an ad damnum clause is freely granted, and we find no reason to disturb the court's exercise of its discretion.

Accordingly, the order of the Supreme Court, New York County (David B. Saxe, J.), entered on or about January 7, 1992, which, *inter alia,* granted partial summary judgment dismissing plaintiff's twelfth and thirteenth causes of action, for strict liability and negligence, against defendant Morse/Diesel, Inc., and granted plaintiff's cross motion to increase the ad damnum clause, should be unanimously modified to reverse that portion of the order which granted defendant's motion for summary judgment on plaintiff's thirteenth cause of action, sounding in negligence, and to deny the motion as to that cause of action, and should otherwise be affirmed, without costs.

MILONAS, J. P., ELLERIN, KASSAL and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 7, 1992, unanimously modified to reverse that portion of the order which granted defendant's motion for summary judgment on plaintiff's thirteenth cause of action, sounding in negligence, and to deny the motion as to that cause of action, and otherwise affirmed, without costs.