**BOCRE LEASING CORP., Plaintiff,**

v.

**GENERAL MOTORS CORPORATION (ALLISON GAS TURBINE DIVISION), Defendant.**

**No. CV 91–3390.**

United States District Court, E.D. New York.

Jan. 10, 1994.

As Amended Jan. 24, 1994.

232

Gilman Olson & Pangia, by Michael Pangia, Washington, DC, for plaintiff.

Katten Muchin & Zavis, by John N. Romans and Lawrence S. Rosen, New York City, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Bocre Leasing Corporation ("plaintiff" or "Bocre") brought a used helicopter from Edwards and Associates ("Edwards"), a broker of used aircraft. The helicopter, which was manufactured by Allison Gas Turbine Division of General Motors Corporation ("defendant" or "Allison"), failed while in flight. Although no one was injured as a result of the failure, the helicopter itself sustained damage. Plaintiff brought suit against Allison, under both a negligence and strict liability theory, seeking to recover for the economic damage it suffered as a result of the helicopter's failure. Presently before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendant's motion is granted.

### I. BACKGROUND

The underlying facts of this case are neither complicated nor in dispute. In 1986, Bocre brought the helicopter "as is" from Edwards for $214,000. On May 31, 1989, the helicopter experienced a loss of power and was forced to crash land. Fortuitously, no one was injured as a result of the crash and no property other than the helicopter itself sustained any damage. Subsequent to the crash, the helicopter was placed on a flat bed truck which was too high for the underpasses under which it travelled. As a result, the helicopter suffered more damage. Plaintiff,

which had insured the helicopter, received $275,000 from its own insurer and $96,000 from the trucker's insurer.

### II. DISCUSSION

Both parties agree that New York law applies to this diversity case. Thus, the issue in this case is whether New York would allow a buyer in a commercial transaction to sue in tort the manufacturer of a product which malfunctions in a way that could cause great personal or property damage, but which only causes injury to the product itself and economic loss.[1] In *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the Supreme Court, exercising admiralty jurisdiction, considered this precise question. In that case the Court held that there is no "cause of action in tort ... when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *Id.* Although *East River* is not binding on New York, it has widely influenced the development of products liability law throughout the country. *See e.g., Cooperative Power Ass'n v. Westinghouse Elec. Corp.*, 493 N.W.2d 661 (N.D.1992); *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992); *Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 486 N.W.2d 612 (1992); *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir.1990) (applying Wisconsin law); *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649 (Okla.1990); *Laurens Elec. Coop., Inc. v. Altec Indus., Inc.*, 889 F.2d 1323 (4th Cir.1989) (applying South Carolina law); *Continental Ins. v. Page Eng'g Co.*, 783 P.2d 641 (Wyo.1989); *Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So.2d 671 (Ala.1989); *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110 (3rd Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987) (predicting Pennsylvania law on the basis of *East River*); *Public Serv. Co. of New Hampshire v. Westinghouse Elec. Corp.*, 685 F.Supp. 1281 (D.N.H.1988) (applying New Hampshire law); *O'Brien Cos. v.*

---

1. Defendant suggests that if this Court is hesitant to predict how the New York Court of Appeals would decide this issue, it should certify the question directly to the New York Court of Appeals. Even if this Court was inclined to do so, however, there is no mechanism in New York allowing district courts to certify questions. *See* 22 NYCRR 500.17.

*Challenge–Cook Bros., Inc.,* 672 F.Supp. 466 (D.Colo.1987) (applying Colorado law); *Anderson Elec., Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1987). · This Court must therefore predict whether New York, like most of the other jurisdictions that have considered the issue, would adopt the *East River* approach in this case.

## A. *The East River Approach*

In *East River,* the charterers of certain supertankers brought suit against the manufacturer of the ships' turbines after the turbines malfunctioned, causing injury to the supertankers themselves, but to no other property or person. The charterers, who were not in privity of contract with the manufacturer [2], sought to recover in tort for the pure economic loss they suffered as a result of the defective engines.

The Court reviewed the three basic land-based approaches before making its decision. The majority approach, which the Court adopted, disallowed tort recoveries when the product caused only economic loss, regardless of the potential for serious personal injuries or property damage. In contrast, the minority approach allowed tort recoveries for defective products causing only economic loss even when the malfunction was not unduly dangerous. Finally, the intermediate approach attempted to "differentiate between 'the disappointed users … and the endangered ones,'" and allowed a tort recovery only when the plaintiff was placed in danger as a result of the product defect. *East River,* 476 U.S. at 869, 106 S.Ct. at 2301 (quoting *Russell v. Ford Motor Co.,* 281 Or. 587, 575 P.2d 1383, 1387 (1978)). After reviewing the land-based approaches, the Court determined that so long as the malfunction causes only economic loss, "[e]ven when the harm to the product itself occurs through an abrupt, accident-like event," there can be no recovery in tort. *East River,* 476 U.S. at 871, 106 S.Ct. at 2302.

The Court rejected the minority approach because it feared that it would expose manufacturers to run-away damages. As the Court stated, the "minority view fails to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages." *Id.* The Court found the intermediate approach unsatisfactory as well, stating that because the intermediate approach "essentially turn[s] on the degree of risk, [it is] too indeterminate to enable manufacturers easily to structure their business behavior." *Id.* at 870, 106 S.Ct. at 2796.

## B. *New York Law*

In *Schiavone Constr. Co. v. Elgood Mayo Corp.,* 167 A.D.2d 216, 561 N.Y.S.2d 721 (1982), a case that pre-dates *East River,* the New York Court of Appeals followed the intermediary approach and held that a remote purchaser could not recover in tort for economic losses sustained as a result of a defective product, where that product was not unduly dangerous. *See also Dudley Constr. v. Drott Mfg. Co.,* 66 A.D.2d 368, 412 N.Y.S.2d 512 (4th Dep't 1979). In *Bellevue South Assoc. v. HRH Constr. Co.,* 78 N.Y.2d 282, 574 N.Y.S.2d 165, 579 N.E.2d 195 (1991), the Court of Appeals was called upon to revisit the issue for the first and only time since the Supreme Court announced its decision in *East River.*

In *Bellevue,* the plaintiff entered into a building contract with a contractor. The contractor thereafter entered into a contract with the defendant subcontractor to supply wood flooring for the project. The wood flooring was defective and the plaintiff sued the defendant subcontractor in tort to recover for the economic loss it sustained as a result of needing to replace the defective flooring. Although the Court of Appeals noted the impact of the *East River* decision, it found it unnecessary to adopt *East River* because it determined that plaintiff's tort claim failed both under the *East River* approach and the *Schiavone* approach inas-

---

**2.** In the initial complaint the entity that had contracted with the manufacturer was named as a plaintiff and brought suit for breach of contract and warranty. After the manufacturer inter- posed a statute of limitations defense, the complaint was amended and the charterers alone brought suit in tort. *East River,* 476 U.S. at 861, 106 S.Ct. at 2297.

much as it concluded that the wood flooring was not unduly dangerous.[3]

Since *Bellevue,* one lower New York court has continued to apply the intermediary approach.[4] In *Trustees of Columbia University v. Gwathmey Siegel and Assoc. Architects,* 192 A.D.2d 151, 601 N.Y.S.2d 116 (1st Dep't 1993), the court allowed the plaintiff to recover in tort for the cost of replacing the defective facade of a building, finding that the crumbling facade was unduly dangerous. *Id.* 601 N.Y.S.2d at 119. Despite *Gwathmey,* however, this Court believes that the New York Court of Appeals, like the majority of other courts that have considered the issue, would apply the *East River* approach to the case at hand. *See Aloe Coal Co.,* 816 F.2d at 118 (intermediate state court decisions not conclusive when predicting how a state's highest court will rule).

Most importantly, the *East River* approach has the benefit of keeping damages in check, which is especially significant in a commercial context such as this. Moreover, this approach also relieves courts of the burden of determining whether a malfunctioning product is unduly dangerous. The New York courts wrestled with this difficult aspect of the intermediary approach in *Bellevue,* resulting in a sharply divided court. Finally, because the *East River* approach is less indeterminate than the intermediary approach, it allows manufacturers to structure their business affairs more efficiently.

Plaintiff in the present case makes much of the fact that it never entered into any contract with the manufacturer and therefore had no opportunity to bargain with it. More-over, plaintiff argues that because it was not in privity of contract with defendant, it has no contractual remedies against it. Therefore, plaintiff argues, to bar this suit would be to foreclose any remedy whatsoever for the loss it suffered, and *East River* was not meant to limit recovery in this way. *See Butchkosky v. Enstrom Helicopter Corp.,* 784 F.Supp. 882 (S.D.Fla.1992) (finding Florida's economic loss rule inapplicable in the absence of privity of contract between the parties).

This Court notes that the plaintiffs in *East River,* like plaintiff herein, were once removed from the transaction. Additionally, the plaintiffs in both *Schiavone* and *Bellevue* were also remote purchasers. If plaintiff has no other recourse in this case it is because it chose to buy the aircraft "as is" from Edwards. In return, plaintiff undoubtedly paid less for the helicopter than it otherwise would have. Plaintiff could have, however, bargained for warranties and in the event of a breach, could have sued Edwards under the contract. Accordingly, this Court finds plaintiff's argument, that the *East River* approach is inapplicable in the absence of a contract between the parties, to be without merit. *See also Miller,* 902 F.2d at 575 ("Privity of contract is not an element of the economic loss doctrine."). Because this Court finds that the New York Court of Appeals would apply the *East River* approach to this case, defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted.

### III. *CONCLUSION*

For the above-stated reasons, defendant's motion for summary judgment pursuant to

---

**3.** This case illustrates the difficult line drawing courts must engage in when applying the intermediate approach. Although the majority found that the wood flooring was not unduly dangerous, the dissent noted that the flooring caused various injuries, including broken bones. *Bellevue,* 574 N.Y.S.2d at 174, 579 N.E.2d at 204.

**4.** Plaintiff relies on one other post-*Bellevue* case to support its position that New York still adheres to the intermediary approach. However, plaintiff's reliance on *Syracuse Cablesystems v. Niagara Mohawk,* 173 A.D.2d 138, 578 N.Y.S.2d 770 (4th Dep't 1991), is misplaced. In that case, a utility company's transformer, located outside of the plaintiff's building, exploded, spewing contaminants throughout plaintiff's building and re-quiring that plaintiff shut down its operation and relocate its business to another location. Plaintiff brought suit against the utility seeking both property damage and economic damages for lost profits. The court refused to dismiss the plaintiff's claims for economic loss.

Unlike the present case, *Syracuse Cablesystems* does not involve a malfunctioning product causing damage only to itself. Moreover, the plaintiff in *Syracuse Cablesystems,* did not contract with any entity whatsoever for the transformer, and its economic damages in no way represent a loss of its benefit of the bargain. Thus, as the New York court recognized, the *Bellevue* line of cases is inapplicable.

Rule 56 of the Federal Rules of Civil Procedure is granted.

SO ORDERED.