SUMITOMO BANK OF CALIFORNIA,
Plaintiff-Appellant Cross-Appellee,

v.

PRODUCT PROMOTIONS, INC., Elwood
Ross and Gwendolyn Ross, et al., De-
fendants-Appellees Cross-Appellants.

No. 81–1620.

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1983.

Rehearing Denied Dec. 1, 1983.

Mike McCollum, Daniel J. Sheehan, Jr., Dallas, Tex., for plaintiff-appellant cross-appellee.

Toby L. Gerber, Dallas, Tex., for Product Promotions, E. Ross and G. Ross.

Blankenship & Potts, Howard Jensen, Dallas, Tex., C. Terry Hagin, Abilene, Tex., for SLT Warehouse.

Before CLARK, Chief Judge, THORN-BERRY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Sumitomo Bank of California appeals the adverse grants of judgment n.o.v. on a special issue of damages in its suit to recover the balance on a note and for damages for conversion of the inventory securing the note. Concluding that the trial judge erred in retroactively excluding summary exhibits which had been admitted in evidence and, as a consequence of that exclusion, in finding no evidence to support the jury's verdict, we reverse the grants of judgment n.o.v. We reinstate the jury's verdict in its entirety and render judgment accordingly.

*Facts*

The factual background of this diversity case is of substantial complexity but the issues presented on appeal require only an abbreviated chronology.

Sumitomo, a California bank, provided inventory financing to Jute King Co., a California company engaged in the importation and wholesaling of macrame and handicraft items. Jute owed Sumitomo $808,-000, a debt secured by an inventory valued at $1,000,000 located in a San Diego warehouse. Jute merged its operation with Product Promotions, Inc. (PPI), a Texas handicraft wholesale firm belonging to Elwood and Gwendolyn Ross. After the merger a new corporation, Caltex International, Inc. was formed. As part of the arrangement, Jute sent most of its inventory to PPI in Dallas where it was placed in a warehouse owned by SLT Warehouse Company (SLT).

Learning of the transfer after the fact, Sumitomo became concerned about the commingling of the Jute (now Caltex) inventory with that of PPI. The bank required that Caltex execute a promissory note equal to the balance of Jute's debt and that the principals of Jute, together with the Rosses, sign personal guarantees of the Jute/Caltex indebtedness. PPI's financer, Dallas International Bank, echoed the concern over inventory segregation and, in November 1977, the parties worked out an agreement establishing inventory control procedures. Under that agreement David Van Dyne, a certified public accountant employed by one of the principals of Jute, tracked and reported to the parties all movements of inventory in and out, properly ascribing shipments to Jute/Caltex or to PPI. SLT agreed to maintain records and advise the parties of all goods received into inventory or removed from inventory. Van Dyne was to do a periodic inventory update. In other contracts, the parties agreed that SLT would maintain the inventories at a "hold figure," and allow no shipment which would reduce the involved inventory value

below that figure absent authorization of the financing bank.

The new operation lost money, no payment was made to Sumitomo and, in January 1978, Sumitomo foreclosed and acquired at sale the Jute inventories in San Diego and in Dallas. After crediting net foreclosure proceeds, the Jute/Caltex debt was reduced to $108,000. After the foreclosure acquisition, Sumitomo's goods remained in the SLT warehouse along with that of PPI until March 1978 when, at the direction of Elwood Ross, the PPI goods were moved to a new warehouse facility. An inventory of Sumitomo's goods immediately following the movement of PPI's stock reflected a substantial shortage.

Sumitomo filed the instant suit against PPI and the Rosses for the balance of the Caltex note as well as for the alleged conversion of inventory by PPI and Elwood Ross. In addition, Sumitomo sued SLT, charging negligence and breach of bailment. Sumitomo also sued Dallas International Bank but settled prior to trial. PPI and the Rosses denied liability and counterclaimed, alleging that various arrangements among the parties limited liability and that Sumitomo's settlement with Dallas International Bank caused the latter to foreclose on PPI, occasioning loss to PPI.

The case was submitted to the jury on eight special inquiries. The jury answered all eight questions favorably to Sumitomo, including a finding that Sumitomo had established conversion of inventory worth $58,809.18. Question number seven and the jury's response were as follows:

> What sum of money, if any, do you find from a preponderance of the evidence was the reasonable market value of the Sumitomo inventory which was wrongfully removed by defendants Elwood Ross or PPI from the Addison warehouse? Answer in dollars and cents, if any.
> ANSWER ____$58,809.18____

Following entry of judgment on the verdict, defendants sought judgment n.o.v. seeking to overturn the jury's verdict in whole or in part. The trial judge had previously directed a verdict on defendants' counterclaims. The judge reviewed the evidence before the jury as if certain summary exhibits were not in evidence, then granted SLT's motion, absolving it of liability, and granted that part of the motion of PPI and Ross relating to the conversion claim stating "there is no evidence in the record to support the jury's finding to question number seven."

### Summary Exhibits

The inquiry into the adequacy of the evidence to support the jury's response to question number seven necessarily focuses on exhibits PX-75 and PX-76. During the course of his testimony David Van Dyne identified PX-75 and PX-76 as summaries of inventory accounting calculations he made which were based on shipping and receiving records prepared by Vera Gray, an employee of PPI who performed inventory-related duties for SLT and was referred to as an employee of both defendants. PX-75 was a line-by-line summary exhibit which in turn was summarized in PX-76. The exhibits were admitted under Fed.R.Evid. 1006,[1] over the objection of defense counsel. The objection originally voiced was not based on Rule 1006 but challenged the inventory analysis commencement date. There was no timely objection raising Rule 1006 grounds. After the summaries were received in evidence, counsel for Sumitomo gratuitously offered to make the underlying records available. Defense counsel indicated their interest in reviewing the records and arrangements were made for delivery of the records to the courtroom. Upon examination, it was discovered that the boxes of records contained

1. Rule 1006 provides:
   The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or

calculation. The originals, or duplicates shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

invoices for a period other than the time relevant to the litigation.

During the charge conference, defense counsel moved to strike the summaries, urging Rule 1006 and complaining that the documents produced were not the proper underlying records. The trial judge refused to strike the summaries reconfirming his decision to accept them in evidence.

### Abridging the Record on Judgment N.O.V.

■ The trial judge erred in retroactively striking the summary exhibits and then gauging the jury's performance on the fictive basis that the summary evidence was not before it. Although acceptable in the context of a motion for new trial, see *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940), this methodology is not appropriate in connection with a motion for judgment n.o.v. In this regard, we agree with the holding of our colleagues of the Eighth Circuit in *Midcontinent Broadcast Co. v. North Central Air, Inc.*, 471 F.2d 357, 358 (8th Cir.1973), declaring:

> Although the trial court found insufficient evidence to sustain the verdict, it did so only after excluding plaintiff's expert testimony which had been presented to the jury. This was error. In ruling on the sufficiency of evidence the trial court must take the record as presented to the jury and cannot enter judgment on a record altered by the elimination of incompetent evidence.

*See,* Wright & Graham, Federal Practice and Procedure: Evidence § 5041, at 229–30: "The judge cannot grant a directed verdict or judgment notwithstanding the verdict by ignoring evidence he has admitted on the ground that the admission was error." *See also Hernon v. Revere Copper & Brass, Inc.*, 363 F.Supp. 96 (E.D.Mo.1973); *Townsend v. United States Rubber Co.*, 74 N.M. 206, 392 P.2d 404 (1964).

It was incumbent upon the trial court to consider all of the evidence before the jury, as it was in fact presented to the jury, and to apply the standard we articulated in

*Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc):

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

■ Upon completion of this exercise, it is apparent that there can be only one conclusion in this case—there was sufficient evidence to support the jury's verdict on question number seven.

### Admissibility Vel Non

■ We perceive no error in the trial court's initial decision to admit PX–75 and PX–76 into evidence and his subsequent refusal during the charge conference to strike them from evidence as being inconsistent with Rule 1006. The scenario in this case is not the typical Rule 1006 situation in which one party tenders a summary of voluminous records and the other party timely objects and demands access to the source records.

Defendants timely objected to introduction of the exhibits, but not on Rule 1006 grounds. After the exhibits were accepted in evidence, Sumitomo's counsel volunteered to furnish several boxes believed to contain the base records. No request for production was made by defense counsel; the court did not order production. After it was discovered that the boxes tendered contained the invoices Gray had prepared during a period different from the time cover-

ed by the summary, defendants' interest in the records intensified. This sudden interest was markedly different from their prior manifestations. The summary was prepared by Van Dyne long before trial and copies were furnished to defendants, who questioned Van Dyne about the summary at great length during the course of a deposition which spanned six days. No one demonstrated the slightest interest in the source records until it appeared that trial advantage might be gained by complaining that Sumitomo's counsel had failed to discharge his voluntarily assumed responsibility to produce them. Under these very limited circumstances, including the failure of timely objection, and being persuaded that defendants suffered no prejudice, we are convinced that the purpose of Rule 1006 is not compromised by the admission of the summary into evidence. *See, e.g., United States v. Smyth*, 556 F.2d 1179 (5th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977).

■ Finally, in support of their motions for judgment n.o.v., appellees argued that the inventory period covered in the evidence related to a time other than the critical January—April span. They also argued that there was no proof of market value to support the jury's verdict. Neither contention has merit. The evidence offered, including the challenged exhibits and Van Dyne's testimony, provided the jury with a sufficient basis for its inventory loss determination. As to value, the jury obviously took the cost of goods figure, as reflected in the summaries, and used that figure as the true measure of Sumitomo's loss. We are not prepared to say that the jury acted unjustifiably in doing so.

### The Cross-Claims

■ SLT contends that any finding of damages on the conversion claim must be limited as a matter of law to the "hold figure" of $350,000 in the warehousing contract. The trial court observed that the clause was intended to assure that the stated amount of inventory remained in the warehouse; it was not meant to exonerate SLT from intentional shortages. Nor does the clause expressly state that it limits liability for negligent conduct. We agree with the district court that the contract does not establish an absolute bailment limit shielding the warehouse from all actions and liability in excess thereof. Judgment n.o.v. in this regard was properly denied.

■ SLT, joined by PPI, also contends that Sumitomo's settlement with Dallas International Bank bars further recovery. The district court found that defendants had not met their burden under Texas law to establish the proper allocation from the settlement. *See Hill v. Budget Finance & Thrift Co.*, 383 S.W.2d 79 (Tex.Civ.App.—Dallas 1964). Finding no evidence to guide the appropriate apportionment and because all parties must be equally liable before settlement credit is allowed, *id.* at 81, we conclude that the district court properly denied the motion of PPI and SLT for judgment n.o.v. on this issue.

We find no merit in the contention that the decision by Dallas International Bank to foreclose on PPI was substantially affected by the fact that the Dallas bank paid Sumitomo $62,000 in settlement of their litigation. Dallas International acted in routine fashion to protect its interest in a realized or threatened default involving one of its debtors.

■ Finally, PPI claims that the court erred in placing the burden on it to prove that Sumitomo's foreclosure sale was commercially unreasonable. The defendants properly bore that burden. *See Pruske v. National Bank of Commerce of San Antonio*, 533 S.W.2d 931 (Tex.Civ.App.—San Antonio 1976). The jury was properly instructed on controlling provisions of Texas law. Its verdict must stand.

The judgment of the district court is AFFIRMED except as it relates to entry of judgment n.o.v. in favor of defendants on the conversion issue in which respect it is REVERSED. The jury verdict is reinstated in all respects, and the case is REMANDED to the district court for the entry of judgment consistent herewith.