**TEXAS COMMERCIAL BUSINESS SYSTEMS, INC., and Commercial Business Systems, Inc., Plaintiffs–Appellants.**

**v.**

**FEDERAL COMMUNICATIONS CORPORATION, and William Tynes, Defendants–Appellees.**

**No. 89–1035.**

United States Court of Appeals, Fifth Circuit.

April 16, 1990.

H. Kenneth Kudon, Levin, Rosenstein & Kudon, Washington, D.C., Jay A. Brandt, Gardere & Wynne, Dallas, Tex., for plaintiffs-appellants.

Talmage Boston, Payne & Vendig, Dallas, Tex., for defendants-appellees.

Before GOLDBERG, POLITZ and JONES, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiffs, Texas Commercial Business Systems Inc., and Commercial Business Systems, Inc. (collectively referred to as "TCC") sued Federal Communications Corp. ("FCC") for money damages based on tortious interference with business relations. The jury returned a verdict for TCC. The district court then granted FCC's motion for a judgment notwithstanding the verdict. Under a different rationale, we affirm the ruling for FCC.

I. THE FACTS

TCC purchased new and used controllers. A controller is a device used for controlling and routing data in computers. TCC reconditioned and resold the used controllers. TCC claims that it lost business to FCC in the used controller market because FCC offered reconditioned controllers at lower prices. TCC further claims that FCC offered lower prices because FCC engaged in a fraudulent kickback scheme which enabled FCC to recondition the used controllers at no charge.

To prove tortious interference, TCC had to establish that FCC's alleged scheme caused TCC's lost sales. TCC hired Dr. Edward Heiden, an economist, to testify about causation. Dr. Heiden's testimony

attempted to weave the facts of the case with general economic principles to demonstrate that FCC caused TCC's damages. The crux of Dr. Heiden's argument was that FCC's scheme caused TCC's damages because buyers purchase controllers primarily on the basis of price and FCC's scheme allowed FCC to offer controllers at lower prices than TCC.

The court required the jury to answer special interrogatories, inter alia, on causation. The jury returned a verdict in favor of TCC. In response to the special interrogatories, the jury found that: (1) FCC tortiously interfered with TCC's prospective business relations; (2) this tortious interference proximately caused damage to TCC; and, (3) as a result, TCC suffered damages.

The court then granted FCC's motion for a judgment notwithstanding the verdict. The court stated that FCC's evidence on causation consisted of the survey and Dr. Heiden's expert testimony. Dr. Heiden supervised the taking of the survey. He designed the survey to ascertain the factors that buyers consider when purchasing controllers. According to the court, without Dr. Heiden's testimony, the jury could only speculate from the survey that FCC's tortious conduct caused TCC's damages. The court reasoned, however, that Federal Rule of Evidence 403 excluded Dr. Heiden's testimony and that Dr. Heiden had no rational basis for concluding that the kickback scheme enabled FCC to sell controllers to TCC's customers at a price that FCC could not have offered absent the scheme. Because the court ruled that Dr. Heiden's testimony should have been excluded, the court granted FCC's motion for a judgment notwithstanding the verdict. TCC appealed.

## II. DISCUSSION

■ A district court may not grant a judgment notwithstanding the verdict by disregarding evidence admitted at trial on the ground that the court erred by admitting the evidence.[1] In the present case, the district court contravened this rule when it granted FCC's motion for a judgment notwithstanding the verdict by disregarding Dr. Heiden's testimony. We must thus consider Dr. Heiden's testimony in determining whether the court erred when it granted a judgment notwithstanding the verdict to FCC.

In reviewing a motion for a judgment notwithstanding the verdict, we have held that:

It [is] ... incumbent upon the trial court to consider all of the evidence before the jury, as it was in fact presented to the jury, and to apply the standard we articulated in *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). "On motions ... for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."[2]

1. *See Sumitomo Bank of California v. Product Promotions*, 717 F.2d 215, 218 (5th Cir.1983) ("The trial judge erred in retroactively striking the summary exhibits and then gauging the jury's performance on the fictive basis that the summary evidence was not before it. Although acceptable in the context of a motion for a new trial ... this methodology is not appropriate in connection with a motion for a judgment n.o. v."); *Dixon v. International Harvester Co.*, 754

F.2d 573, 580 (5th Cir.1985) ("In considering a motion for judgment notwithstanding the verdict (as opposed to a motion for a new trial), a district court may not exclude or disregard evidence admitted at trial on the basis that the admission was error.").

2. *Sumitomo Bank of California*, 717 F.2d at 218.

■ Even construing Dr. Heiden's testimony most favorably to TCC, however, TCC still fails to establish causation.[3] Dr. Heiden's testimony assumes that buyers purchase reconditioned controllers primarily on the basis of price. In essence, TCC's theory of causation, supported by Dr. Heiden's testimony, is that the kickback scheme gave FCC a cost advantage which translated into a price advantage over FCC. Dr. Heiden and his associates surveyed the relevant controller market to support this theory. The court excluded the survey from evidence. During direct examination, however, Dr. Heiden referred to the customer interviews. Then on cross examination, FCC introduced the survey and questioned Dr. Heiden at length about it.

None of the buyers in the survey stated that they primarily considered price when they purchased controllers. Although Dr. Heiden created an economic model where price controlled purchasing decisions, this model was not tied to the facts of the case. His opinion, based on that model, had little probative value. In addition, the evidence demonstrates that FCC would have made a profit even without the scheme. As the district court stated, "[t]he scheme did not therefore permit FCC to make sales that it could not otherwise have made." In conclusion, FCC's conduct could not have proximately caused TCC's damages. The ruling of the district court is therefore AFFIRMED.

---

**3.** *B. Cantrell Oil Co. v. Hino Gas Sales,* 756 S.W.2d 781, 784 (Tex.Civ.App.1988) ("As in any other tort action, [i.e., tortious interference with contractual relationships] there must be a causal link between the conduct complained of and the resulting damages."); *Diesel Injection Sales & Services v. Renfro,* 656 S.W.2d 568, 573 (Tex. Civ.App.1983) ("Generally, in order to maintain an action for contractual interference, it must be established that (1) there was a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred."); *Arabesque v. Academy of Fine Arts,* 529 S.W.2d 564, 568 (Tex.Civ.App.1975) ("To hold Academy liable for interference with the contractual relationship between Harris and Arabesque, it was incumbent upon Arabesque to demonstrate that Academy actually caused or brought about the interference.")