JOHNSON, Circuit Judge,
dissenting:
The jury in this case exonerated the Defendant because of the purported utility of the Defendant’s asbestos-containing products. However, the evidence of utility presented by the Defendant was, as the magistrate judge correctly found, largely irrelevant and thus not sufficient to support a jury finding. Accordingly, the magistrate judge correctly granted the Plaintiffs motion for judgment notwithstanding the verdict. Unfortunately, the majority herein has been taken in by the same irrelevant evidence as was the jury and has voted to overturn the action of the magistrate judge. Therefore, I respectfully dissent.
DISCUSSION
It is overwhelmingly accepted now that exposure to asbestos particles is extremely hazardous, even in small quantities. Moreover, the jury in this case implicitly recognized this fact when it found that Mr. John-stone’s exposure to the asbestos in the Defendant’s vessels was a substantial contributing cause to his death. Despite this recognized danger, though, the jury still found that the asbestos-containing products were not unreasonably dangerous per se.[1]
The basis for this finding is the second prong of the test laid out in Halphen v. Johns-Manville Sales, Corp., 484 So.2d 110 (La.1986). Under that test, a product is “unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product.” Id. at 114 (emphasis added). Defense lawyers convinced the jury that the utility of their asbestos-containing products was very great and thus it outweighed the recognized danger that the products presented.
However, most all the evidence that Keene presented on the issue of utility extolled the utility of the products a generation before Mr. Johnstone was exposed to the asbestos in Keene’s vessels. Mr. Johnstone worked aboard Keene’s vessels in 1964 and from 1967 through 1978. The thrust of Keene’s utility evidence, though, consisted of patriotic ruminations about the critical role played by asbestos in the American victory in the Sec *1225 ond World War.[2] Additionally, other evidence was introduced by Keene of the perceived utility of asbestos when the ships were built in the 1940s.
The extraordinary circumstances of the war years may well have heightened the utility of asbestos-containing products in that time period vis-a-vis their danger-in-fact. However, those circumstances did not pertain to the time-frame in which Mr. John-stone was exposed some two to three decades later. Thus, this evidence was not relevant.
Instead, evidence as to utility must relate to the time of the use of the products by the plaintiff. This was recognized in Halphen. There, the Louisiana Supreme Court stated that
the benefits are those actually found to flow from the use of the product, rather than as perceived at the time the product was designed and marketed. The fact that a risk or hazard related to the use of a product was not discoverable under existing technology or that the benefits appeared greater than they actually were are both irrelevant.
Halphen, 484 So.2d at 114. Here, all the evidence of the benefits of asbestos during the time of the war in the 1940s dealt with the perceived benefits at the time the vessels were built (“designed and marketed”). This evidence did not relate to the benefits that actually flowed from the products at the time Mr. Johnstone was exposed in 1964 and from 1967 through 1978.
Moreover, the jury was correctly instructed that the evidence of the utility had to pertain to the time that Mr. Johnstone was exposed. Specifically, the jury was instructed that
the benefits are those actually found to flow from the use of the product at the time that Mr. Johnstone sustained an injury, rather than the benefits perceived at the time the product was designed and/or marketed.
Ree., Vol. 9, at 2011. Thus, as the 1940s evidence did not show the utility that flowed from the products at the time of Mr. John-stone’s exposure, it should not have been given weight in the jury’s balancing of the risk versus utility.
The magistrate judge recognized this when she looked at the evidence. She found that the evidence on utility from the war years was insufficient to support a jury finding because it did not relate to the facts of the case. Next, she looked at the evidence of utility which did relate to the case, namely the evidence of the heat insulation properties of the asbestos. Balanced against this was the substantial evidence of the risk of harm and the evidence that Mr. Johnstone was exposed to clouds of asbestos dust. Given the paucity of relevant evidence as to the utility versus the clear evidence of risk of harm, she concluded that no reasonable jury could find that the utility of this product outweighed the strong evidence of risk of harm. Thus, she granted Mr. Johnstone’s Motion for JNOY.
The standard by which we review a grant of a JNOV is set out in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc). Under that standard, the Court must consider all evidence in a light most favorable to the nonmovant’s case. “If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper.” Id, at 374. Moreover, a mere scintilla of evidence is not enough to support a jury issue, but rather, there must be substantial evidence to support a jury question. *1226 Landry v. The Cooper/T. Smith Stevedonng Co., 880 F.2d 846, 850 (5th Cir.1989).
In finding that the magistrate judge’s actions did not comport with the above standard, the majority makes several arguments. First, the majority contends that the magistrate judge erred by disregarding the evidence adduced of the utility of the products during the war years. This argument is grounded on the case of Texas Commercial Business Systems, Inc. v. Federal Communications Corp., 898 F.2d 460 (5th Cir.1990). That case held that “[a] district court may not grant a judgment notwithstanding the verdict by disregarding evidence admitted at trial on the ground that the court erred by admitting the evidence.” Id., at 461. However, despite this pronouncement, the Texas Commercial Court went on to affirm the district court’s granting of a JNOV in that case. This is because even though the expert testimony that was improperly admitted could not be disregarded, it was still insufficient to support the jury’s verdict because it did not relate to the facts of the case. Id., at 462; See also, Genmoora Corp. v. Moore Business Forms, Inc., 939 F.2d 1149, 1157 (5th Cir.1991).
The magistrate judge here followed the Texas Commercial case exactly. She did not disregard the evidence of utility from the 1940s. To the contrary, in her Order and Reasons explaining her decision, she carefully laid out the substance of all of that evidence. Then she found, as did the Fifth Circuit in Texas Commercial, that that evidence did not relate to the facts of the case and thus was insufficient to support the jury’s finding. Thus, she granted the JNOV. There was nothing improper in this methodology.
Next, the majority argues that there is substantial evidence of utility because the anachronistic evidence from the war years is indeed relevant. The majority attempts to support its contention by pointing out that “Halphen requires that the danger in fact of the product to society as a whole be weighed against the utility of the product to society as a whole.” Maj. op. at 1223 (citing Valenti v. Surgiteck-Flash Medical Eng. Corp., 875 F.2d 466, 467 (5th Cir.1989)). While this is undoubtedly true, this writer fails to see how this supports the majority’s conclusion. Surely the “society as a whole” refers to the society as it existed at the time of the plaintiffs injuries and not to society as it existed at some unspecified time in the past.
The majority further argues that this evidence was relevant because Mr. Johnstone sailed on other vessels during the war years and thus was exposed to other asbestos-containing products during that time. That may be, but the issue here is whether exposure to Keene’s asbestos-containing products, which occurred in 1964 and from 1967 to 1978, legally caused Mr. Johnstone’s death. The jury answered this question affirmatively. There may be other legal causes, but this does not affect Keene’s liability to Mi’. John-stone.[3] Moreover, Keene cannot borrow the defenses that other possible defendants, on whose vessels Mr. Johnstone sailed in the 1940s, might be able to press.
■ The majority’s final argument that some of the anachronistic evidence is relevant concerns the MORRO CASTLE incident in 1934. In this maritime tragedy, a large passenger ship caught fire off the coast of New Jersey and caused the death of over 1000 people. This led to governmental regulations that required asbestos to be used in vessels in firewalls, bulkheads and ceiling materials.
Though this fireproofing material is similar in composition, it is a different product from the pipe covering insulation that was the cause of Mr. Johnstone’s injuries. There was ño evidence presented that Mr. John-stone was exposed to fireproofed walls for which Keene was responsible. Moreover, the tendency of fireproof walls to release asbestos fibers may be substantially different from that of the pipe insulation. In normal circumstances, the fireproofed walls are under no particular stress. By contrast, the pipe covering insulation protects steampipes in the engine room that are routinely super *1227 heated. Thus, the relevance of the utility of asbestos firewalls, whose use was mandated after the tragic MORRO CASTLE disaster, is not relevant to the risk/utility assessment of asbestos-containing pipe insulation.
The majority concludes by opining that in finding that the evidence from the 1940s does not relate ,to the facts of the case, the magistrate judge erroneously limited her consideration of the risks and utility attendant to the use of this product to the risks to Mr. John-stone individually, as opposed to the risks to society as a whole. This is simply not accurate. The magistrate judge considered society as a whole, but it was the society that existed when Mr. Johnstone was exposed and not the society of a generation earlier. CONCLUSION
The expert testimony of the utility of the asbestos-containing products during the war years did not relate to the facts of the case. See Texas Commercial, 898 F.2d at 462. Besides this evidence, there was very little presented on the issue of utility. There was, however, substantial evidence of the potential risk of harm from these asbestos-containing products. In fact, the jury implicitly recognized that these products caused at least some risk of harm to society when it found that Mr. Johnstone’s exposure to them substantially contributed to his death. Balancing the relevant evidence of utility against the evidence of potential risk of harm, the magistrate judge found that, even viewing the evidence in a light most favorable to Keene, no reasonable jury could conclude that the utility of these asbestos-containing products outweighed their potential risk of harm. This assessment was correct and thus it was altogether proper for the magistrate judge to grant the Motion for JNOV. See Boeing, 411 F.2d at 374.
Nonetheless, the majority reverses the magistrate judge’s actions by erroneously focusing on the perceived benefits of the products at the time the vessels were built r.s opposed to the actual benefits that flowed at the time Mr. Johnstone was injured. See Halphen, 484 So.2d at 114. These benefits pertained to an era far removed by time and circumstance from the time-frame in which Mr. Johnstone was exposed. They do not, however, relate to the facts of this case. Accordingly, this dissent is respectfully submitted.

. Under Louisiana law, this is a factual finding despite the misleading terminology. Horton v. *1225 Buhrke, A Division of Klein Tools, Inc., 926 F.2d 456, 459 (5th Cir.1991).

. Also recounted by the majority is the evidence that asbestos is light-weight thus benefitting America when she was building warships under the constraints of the Washington Treaty of Limitations. Under that 1922 vintage treaty, there were limits on the maximum tonnage of warships and thus every pound saved meant that much more armor, guns and ammunition for a given displacement. Limitation of Naval Armament (Five-Power Treaty or Washington Treaty), Feb. 6, 1922, T.S. No. 671. While this is an interesting historical footnote, the Defendant's vessels were not warships and this treaty was no longer in effect at the time that Mr. Johnstone was exposed to the asbestos in the Defendant's vessels.

. See Restatement (Second) of Torts § 875 (1979) ("Each of two or more persons whose conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm”).